UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL POCOCK,

            Plaintiff,

-against-

SOFTWARE IN THE PUBLIC INTEREST, INC., ET AL.,

            Defendants.

25-CV-3883 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is appearing *pro se*, brings this action alleging that Defendants violated his rights. Named as Defendants are 25 individuals and entities located in various states throughout the country and in several European countries. By order dated May 30, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

## STANDARD OF REVIEW

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

    While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

Plaintiff Daniel Pocock, who provides a Delaware address for himself but alleges that he is a citizen of Switzerland, brings this action against 25 corporations, unincorporated entities, and individuals who are located throughout the United States and several European countries. He attempts to assert claims under the First Amendment; claims of "bad faith" based on "using words like diversity, equity and inclusion . . . to promote a culture that reeks of intolerance"; copyright; racketeering; conspiracy; "teaching techniques for civil disorder"; "Code of Conduct *gobbledygook*, akin to the Sovereign Citizen *gobbledygook* that US federal court has called out in recent cases"; and "interpreting the Code of Conduct, a.k.a. practicing law without a license, impersonating a federal judge, etc." (ECF 1, at 7.) Elsewhere in the complaint, he states that he is asserting claims for defamation, "trade libel," intentional infliction of emotional distress, stalking, conspiracy, and breach of contract. (*See id.* at 17.)

Plaintiff states that the events giving rise to his claims occurred online, but he "suspect[s]" that they took place in New York, San Francisco, Toulouse, South African, Utah, Geneva "and others." (*Id.* at 16.) The 139-page complaint, which includes a four-page Table of Contents, begins with a summary in which Plaintiff alleges that he was an "unpaid mentor for Google's Summer of Code," but that "other people gained more benefits from this relationship than the plaintiff himself." (*Id.*) Plaintiff alleges, "The leadership figures, now defendants, used their positions to try and manipulate and denounce the former mentor" and when Plaintiff "was

no longer willing or available to work for free, they couldn't stand the thought of him getting paid for his work elsewhere." (*Id.*) Because of Defendants' "selfishness . . . all the skeletons have been let out of the closet, including a whole suicide cluster, with one of the casualties in Switzerland deceased the very day the plaintiff got married." (*Id.*) Plaintiff compares Defendants to the NXIVM cult and alleges that Defendants have "engage[d] in various shaming and social engineering tactics that are a cybersecurity risk for other volunteers, for the general public and for businesses who employ open source software developers." (*Id.*)

The following allegations are drawn from the complaint and are only examples of the voluminous allegations that Plaintiff sets forth.

In 1983, Dr. Richard Stallman founded the GNU Project. In 1989, Stallman created the GNU General Public License ("GPL"), which is an "agreement between developers as much as it is a license to end-users of the software." (*Id.* at 18.) In 1991, Linus Torvalds created the "Linux kernal" using the GNU GPL "as a license and agreement between co-authors of the kernal." (*Id.*) Development of Debian GNU/Linux software began in 1993 by Ian Murdock. A "Debian Developer" is a term used to refer to "somebody who is a *joint author* under copyright law." (*Id.* at 18 (emphasis in original)). The term "also refers to somebody who has the *skill* of packaging software (creating packages) for a Debian user." (*Id.* (emphasis in original).) Plaintiff refers to himself as a "Debian Developer" in the caption to the complaint.

Plaintiff alleges that, in 1993, when he was 14 years old, he was "the youngest person in his city to pass the amateur radio exam" and began doing "voluntary work involving both amateur radio and open source software." (*Id.*) On July 5, 1997,

> the joint authors ratified the Debian Social Contract. This is a contract between joint authors themselves and also between the authors and the wider world. Article (3) in the Debian Social Contact states "We don't hide problems." Most people feel this is aligned with the principles of the first amendment of the US

> constitution. The joint authors have created intellectual property without receiving any financial remuneration from royalties. Therefore, the free speech rights under the Debian Social Contract are very important because authors don't get anything else in return for their effort.

(*Id.* at 19.)

On December 2, 1998, "a subset of the joint authors subscribed to the Debian Project constitution, forming an unincorporated association." (*Id.* at 20.) Authors of a joint work are "equally entitled to recognition for their work" and "[u]sing the term Debian Developer signifies that somebody is entitled to recognition." (*Id.*) Rights of a joint author cannot be "extinguished by way of expulsion," but some of the defendants "preten[d] they have the power to extinguish rights of their co-authors." (*Id.* at 21.) Plaintiff maintains that any reference to expulsions is therefore "used for the purpose of defamation and libel." (*Id.*) A threat of such defamation "is used to exact control over people, a form of blackmail that gives rise to white collar modern slavery." (*Id.*) Defendants have created "a system of kangaroo courts under the guise of a 'Code of Conduct,'" which Plaintiff asserts, in practice, "could be described as witchcraft and gobbledygook meets law of the jungle." (*Id.*)

Plaintiff discusses numerous deaths, including suicides, of people associated with Debian that Plaintiff alleges occurred under suspicious circumstances. For example,

> In early 2001, Chris Rutter was beginning his undergraduate studies at Cambridge, he had the obligations of a choir scholarship and he was going unpaid voluntary work on Debian until the early hours of the morning. Emails were sent between 2am and 3am in the weeks before his death. He was out on the street late one evening and hit by a car. The police and coroner did not decide there was any fault on the part of the driver. In the absence of any other evidence, it is possible that fatigue was a factor in the death.

(*Id.* at 24.) Similarly, "In July 2005, Jens Schmalzing went to work on a Saturday. In Germany, the cause of death is conf[i]dential. All we know is that he fell from a rooftop." (*Id.* at 25.)

Furthermore,

4

> In September 2005, a group of Debian Developers gathered for a weekend at TU Darmstadt. Photos from the event show them sleeping on the tables. The backstory is that they were encouraged to work for free, to give up the most basic comforts, because they believed in the principles and the Debian Social Contract. One of the participants in Frans Pop, who wrote many emails about his grievances and eventually committed suicide.[1]

(*Id.* at 25.)

Plaintiff discusses Debian's "diversity statement": On May 20, 2021,

> approximately 25% of joint authors voted to have a Debian diversity statement. The majority of authors didn't vote at all and so the diversity statement was imposed by default. The diversity statement begins "The Debian Project welcomes and encourages participation by everyone." . . . Therefore, if the cabals want to exclude somebody they have to make up some hysterical lies and deliberately libel the victim. This is why the subsequent conflicts involve such hysterical examples of libel

(*Id.* at 37-38.)

Defendant Debian Project maintains a website about "Interpreting the Debian Code of Conduct," through which Plaintiff maintains that they "practic[e] law without a license." (*Id.* at 42.) It is a system "with no nature justice or due process" in which "[t]hey take the secret complaints in their den and make up a verdict and punishment without ever giving the accused an opportunity to respond." (*Id.*)

In 2013, Plaintiff began doing unpaid work for Defendants Google, Software in the Public Interest, and Debian Project as a "recruiter/mentor/manager" for the Google Summer of Code and GNOME Outreach Program for Women, which has since been renamed "Outreachy." (*Id.* at 39-40.) On April 26, 2016, Plaintiff sent a comment to the "Google Summer of Code mentors list" in which he raised concerns about the obligation to work 40 hours per week, which "would change the nature of the program from a performance-based project to a time-based

---

[1] The complaint includes a copy of the photograph of people sleeping at desks.

employment" and "have consequences under laws for employment and social security rights in some countries." (*Id.* at 47-48.)

In 2017, Plaintiff raised concerns about Albanian developers "using the Debian logo to give credibility" to an event they were sponsoring on the Greek island of Syros. (*Id.* at 55.) Plaintiff also questioned the how the registration fees for the event were being used. He then raised concerns to leaders of the Mozilla Foundation, one of the event's sponsors, "about money from multinationals creating risks for underage volunteers in Albanian hackspace." (*Id.* at 57.)

On May 26, 2018,

> the defendant FSFE had an Extraordinary General Meeting (EGM) where they resolved to remove the Fellowship elections from their constitution. The last person the community elected was the plaintiff. The defendants don't play fair. The EGM was held in Berlin, Germany. The same person, a German, defendant Matthias Kirschner, as remained president ever since then. The plaintiff's birthday is 9 November, the Kristallnacht, so the experience of Google-funded Germans canceling elections inevitably reminds him of the Holocaust. That smells like a case of Intentional Infliction of Emotional Distress (IIED).

(*Id.* at 71.)

In August 2018, Plaintiff resigned from serving as a mentor for the Google Summer of Code, causing Defendants to be "disrespectful towards the plaintiff's family" and to "advance the narrative of wrongdoing." (*Id.* at 77.) In September 2018, Defendants Zini, Jaspert, and Wiltshire sent Plaintiff "an insulting message . . . telling him that he is not a 'real' Debian Developer." The message's subject was "Revoking Debian Developer Status," which Plaintiff believes is "stealing his reputation, it is libel and it is about creating a system where some joint authors exercise power over their peers." (*Id.*) Because those defendants "want the plaintiff to work and they continue to cherry-pick the benefits of all his previous work but they are retrospectively canceling his right to speak under the Debian Social Contract," they are placing Plaintiff in a system of "modern slavery." (*Id.*)

6

In 2022, Axel Beckert, a "Debian joint author," claimed to the "Swiss authorities" that Plaintiff "has been banned from receiving recognition for his status as an author and ordered not to speak about health & safety issues such as the Debian suicide cluster." (*Id.* at 105.) Plaintiff acknowledges that under Swiss custom, "it is important to protect secrecy," but it is outweighed by the "obligation" under the "Debian Social Contract" to "expose the risks around the Debian suicide cluster." (*Id.* at 106.)

Plaintiff references a legal action he was a part of in the Swiss courts involving Defendant Software in the Public Interest ("SPI") in which "Debianists use[d] Swiss civil procedure to violate [the] privacy of plaintiff's family," and in which "plaintiff exposes illegal legal fees insurance cover-up." (*Id.* at 111.)

On February 20, 2024, Defendant SPI "submitted a complaint containing libel about the plaintiff through the WIPO UDRP denunciation procedure."[2] (*Id.* at 117.) On May 3, 2024, Defendant W. Scott Blackmer "signed a UDRP denunciation of the plaintiff ordering the transfer of domain named to one of the defendants, SPI." (*Id.* at 118.) That document is "loaded with libel" and "accuses the plaintiff of bad faith simply for including the plaintiff's business name in a copyright notice at the bottom of the web site." (*Id.* at 119.) The "legal panel disparaged the plaintiff's submission with a condescending comment that it was not in the form normally prepared by greedy WIPO lawyers." (*Id.* at 120.) Plaintiff accuses SPI and the Debian Project of submitting "defamatory privacy violations in their UDRP case and defendant Blackmer copied-and-pasted the defamation and privacy violations verbatim into his opinion." (*Id.*) On May 6, 2024, WIPO published the "UDRP denunciation" on their website. (*Id.* at 122.) Plaintiff states

---

[2] WIPO appears to be a reference to Defendant World Intellectual Property Organization. Although Plaintiff does not specify, UDRP may be a reference to WIPO's Uniform Domain-Name Dispute-Resolution Policy.

that, "6 May is the Holocaust Remembrance Day and the UDRP seizure of domain names had the effect of censoring web sites about the Debian suicide cluster victims." (*Id.*)

In May 2024,

> the plaintiff was contesting the European elections as an independent candidate. A number of candidates suffered acts of violence during the campaign, demonstrating the additional risks faced by those who engage in public life. The plaintiff observed that people exposed to the gossip experiments on social media and in search results would sometimes, without any valid reason or provocation, become aggressive or apprehensive. This, in turn, left the plaintiff feeling apprehensive about his own safety.

(*Id.* at 124.)

Plaintiff seeks money damages and a wide array of declaratory and injunctive relief.

## DISCUSSION

**A.     Rule 8**

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads sufficient factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), but it need not accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A complaint fails to comply with Rule 8(a)(2) if it is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well

8

disguised.'" *Strunk v. U.S. House of Representatives*, 68 Fed. App'x 233, 235 (2d Cir. 2003) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"). Rule 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged," but it does require, "at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (citation and quotation marks omitted). "It is not the Court's job – nor the opposing party's – to decipher a complaint that is 'so poorly composed as to be functionally illegible.'" *Ghosh v. New York City Hous. Auth.*, No. 21-CV-6139 (AT) (BCM), 2023 WL 3612553, at *6 (S.D.N.Y. Feb. 27, 2023) (quoting *Avramham v. New York*, No. 20-CV-4441, 2020 WL 4001628, at *2 (S.D.N.Y. July 15, 2020), *report and recommendation adopted*, 2023 WL 3746617 (S.D.N.Y. Mar. 20, 2023).

      A complaint that fails to comply with Rule 8 may be dismissed. *See Da Costa v. Marcucilli*, 675 F. App'x 15, 17 (2d Cir. 2017) (dismissing a complaint because it was convoluted, repetitive and difficult to understand); *Anduze v. City of New York*, No. 21-CV-0519 (LLS), 2021 WL 795472, at *2 (S.D.N.Y. Feb. 26, 2021) (dismissing a complaint as incomprehensible because it was illegible and the legible portions were incomprehensible, such that "the [c]ourt is unable to properly evaluate the full nature and extent of [the] [p]laintiff's claims" ); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr. Inc.*, No. 17-CV-3670 (KPF), 2018 WL 3910827, at *12 (S.D.N.Y. Aug. 14, 2018) ("[C]ourts in this Circuit have dismissed complaints that are unnecessarily long-winded, unclear, or conclusory.");

*Barsella v. United States*, 135 F.R.D. 64, 66 (S.D.N.Y. 1991) (stating that the policy requiring courts to liberally construe *pro se* complaints "does not mandate that a court sustain every *pro se* complaint even if it is incoherent, rambling, and unreadable").

Here, Plaintiff's complaint does not comply with Rule 8. Plaintiff asserts claims against more than two dozen defendants located throughout the world. The 139-page complaint describes numerous events occurring over several decades in various European, African, and South American countries. Many of the events described in the complaint do not appear to involve Plaintiff at all. It is unclear to the Court, and would be unclear to any responding defendant, what viable claims Plaintiff is seeking to assert against which defendants. The Court therefore dismisses the complaint for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to file an amended complaint that complies with Rule 8 by including a short and plain statement showing Plaintiff is entitled to relief against each named defendant. Plaintiff's amended complaint must also comply with the standards set forth below.

**B.      Constitutional claims**

Plaintiff repeatedly states that Defendants violated his rights under the First Amendment. Federal constitutional claims arise under 42 U.S.C. § 1983. A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). Nothing in the complaint suggests that any of the defendants are state actors for purposes of Section 1983. Because Defendants appear to be

private actors who are not alleged to work for any state or other government body, Plaintiff cannot state a Section 1983 claim against Defendants.

If Plaintiff seeks to bring federal constitutional claims in his amended complaint, he must allege facts demonstrating that the defendants who allegedly violated his constitutional rights are state actors for purposes of Section 1983.

**C.     State law claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because the Court cannot say at this stage that amendment is futile, the Court grants Plaintiff 30 days' leave to amend his complaint to address the deficiencies identified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses the federal claims in the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: August 20, 2025
       New York, New York

       /s/ Laura Taylor Swain
       LAURA TAYLOR SWAIN
       Chief United States District Judge